IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY ALBERT APODACA,

Petitioner, No. CIV S-08-1048 FCD GGH P

vs.

JAMES D. HARTLEY, et al.,

Respondent. FINDINGS AND RECOMMENDATIONS

_________________________________/

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 conviction for two counts of lewd and lascivious conduct with a child in violation of Cal. Penal Code § 288(a). Petitioner is serving a sentence of 8 years. The petition raises one claim: insufficient evidence to support one of the counts. After carefully considering the record, the court recommends that the petition be denied.

Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.

Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Factual Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> FACTS
>
> The victim, A.A., was 12 years old at the time of trial. Defendant is her grandfather. She testified defendant repeatedly molested her. It began three years earlier when her parents were on vacation and defendant was watching her and her brothers. Defendant took her to the backyard and told her not to tell anyone. The last time was late November or early December 2004 when they went to defendant's house to get a CD for the computer. He touched her in the "girl area" or vagina with his finger. She made an excuse and tried to get away.
>
> That touching was the last time it happened because the victim told her mother about it. She also told her best friend. She told her mother because "I was sick of being touched."
>
> On November 28, 2004, the victim told her mother that defendant touched her inappropriately. The victim was upset, crying and nervous. The mother questioned the victim to clarify what happened; the victim said defendant touched her top and

bottom. The mother told her husband and he called the police.

Officer Jay Newton responded to the call. He spoke with the victim. She told him defendant touched her breasts and vagina that day. She said it had happened many times before, but she could not remember exact dates. The first time, defendant took the victim into the backyard and told her she could not tell or he would go to jail. Officer Newton made an appointment for the victim at UCD Medical Center.

The result of the medical exam was normal. The parties stipulated it was inconclusive as to whether there had been any molestation.

A few days later Detective Richard Bankie arranged for the victim to make a pretext call to defendant. A recording of the call was played at trial.

In the call the victim tells defendant he did not have to pick her up next Thursday because she was going to a friend's house. She said the reason was because he touched her and she did not like it. She asked why he did it. Defendant said, “I don't know. We'll stop though.” She asked defendant to say he was sorry and defendant did. The victim said, “I didn't like your finger went inside there. It didn't feel right.” Defendant responded, “All right. We-me and you help stop, we'll stop. No more.” Defendant promised not to do it again. The victim asked why he did it and defendant said, “I don't know, honey. I'm sorry.”

At trial the victim described in some detail the last touching when she and defendant were at his house looking for a CD. Many times before defendant put his finger in her girl part. He put his finger where the penis would go to make a baby. Defendant had also touched her on her “tops,” her breasts. He did it many times, “more than likely every time like he went to my house or I went to his.” He always touched her under her clothes. She remembered at least three times he touched her on the breast area.

The prosecutor then asked how many times defendant touched her based on the victim's age at the time. The victim could not remember how many times he touched her when she was 10 or 11 years old. It happened almost every time he came over; one time it would not happen, but most of the time it happened every weekend. The victim recalled one time defendant touched her “on my butt.” She was 11 or 12 at the time. When asked if she remembered what time of year it was, she knew it was not winter. The victim claimed defendant touched her “like every weekend.”

The victim's mother testified defendant babysat for them quite often. Their middle child was autistic and defendant was a paid respite worker. He also came over as a grandfather. “He-he basically came almost every weekend.”

In defense, several members of defendants' family testified they had never seen or heard anything about defendant inappropriately touching children.

In closing argument defense counsel argued defendant's good character created a reasonable doubt as to his intent. She argued what happened was really sexual battery, although that was not charged. The first two counts, charged as happening on November 28, 2004, were “easy,” because “we know that something

        > happened." The problem was the remaining seven counts. There was no evidence to establish the time frame. The prosecutor failed to elicit specifics; it was a failure of proof.
>
> Defendant was charged with nine counts of lewd and lascivious acts: two on November 28, 2004; one between October 28, 2004, and November 27, 2004, when the victim was 12 years old; five counts between October 28, 2003, and October 27, 2004, when the victim was 11 years old; and one between October 28, 2002, and October 27, 2003, when the victim was 10 years old.
>
> The jury found defendant guilty of counts one and three, both occurring when the victim was 12. The jury acquitted defendant of the last three counts. It could not reach a verdict on the remaining counts, which were later dismissed on motion of the prosecutor.

Respondent's Lodged Document 6, pp. 5.

Discussion

Petitioner argues that there was insufficient evidence to support his conviction for count 3.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465,

469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc). United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991) (emphasis added).

U.S. v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

The California Court of Appeal denied petitioner's claim for the following reasons:

> DISCUSSION
>
> Defendant contends there is insufficient evidence to support count three, a charge of a lewd and lascivious act between October 28, 2004, and November 27, 2004, when the victim was 12 years old. Defendant contends the evidence does not meet the three-part test of People v. Jones (1990) 51 Cal.3d 294.
>
> In Jones, the Supreme Court addressed the difficult proof problems presented when children are molested over a period of time by someone known to them. In such cases, the child "may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any of such incidents." ( People v. Jones, supra, 51 Cal.3d 294, 305.) The court sought to balance competing concerns presented in such cases. A child molester should not

be immunized from criminal liability merely because he molested his victim repeatedly over an extended time period. On the other hand, a defendant has a due process right to fair notice of the charges against him and a reasonable opportunity to defend against those charges. ( Ibid.)

Rejecting the argument that generic testimony was inherently insufficient, the Jones court noted: "It must be remembered that even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of specific, albeit undifferentiated, incidents, each of which amounts to a separate offense, and each of which could support a separate criminal sanction." ( People v. Jones, supra, 51 Cal.3d at p. 314, original italics.) The court held a child's generic testimony about molestation was sufficient if the child described the kind of act or acts committed with sufficient specificity to differentiate between various types of conduct, described the number of acts with sufficient certainty to support each count, and described the general time period in which the acts occurred to assure the acts were committed within the applicable limitations period. ( Id. at p. 316.)

The Jones court cited with approval, People v. Moore (1989) 211 Cal.App.3d 1400. ( People v. Jones, supra, 51 Cal.3d 294, 316.) In Moore, defendant was charged with forcible rape between June 1, 1985, to August 31, 1985. The victim testified they moved to Signal Hill in the late spring of 1985 and lived in a series of hotels until some time in August. Defendant had sexual intercourse with her almost every night during this period. The victim was able to describe only one specific incident of rape on her birthday in May; that count was charged separately. ( People v. Moore, supra, at p. 1409.) The court found the generic, "almost every night" testimony sufficient to support the rape charge. ( Id. at p. 1412.)

In People v. Matute (2002) 103 Cal.App.4th 1437, defendant was charged with 15 counts of rape of his daughter over a 15-month period. The daughter was 15 and 16 when the assaults occurred. The daughter testified that since they moved to California, not a week went by that defendant did not force sexual intercourse upon her. ( Id. at p. 1441.) On appeal, defendant claimed a conviction based on such generic testimony violated due process. The court disagreed, finding the reasons and conclusions of Jones applied fully even though the victim was not under 14 because she would understandably have difficulty in differentiating the continual rapes perpetrated by defendant. ( Id. at p. 1447.) Given the strong evidence, the court found the failure to give a unanimity instruction harmless beyond a reasonable doubt. ( Id. at p. 1450 .)

Here, the generic testimony that defendant touched the victim almost every weekend, corroborated by the mother's testimony that defendant came over almost every weekend, was sufficient to support count three. This testimony is similar to that approved in Moore, where the child testified the molestation occurred "almost every night" over a three-month period. Here, the victim testified to lewd acts occurring "almost every weekend" over a month period. While the prosecutor could have done a better job in establishing the time frame, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that defendant touched the victim with lewd intent at least once in the month before she told her mother. Further, the jury was instructed it had to unanimously agree on the act committed.

Respondent's Lodged Document 6, pp. 5-8.

Cal. Penal Code § 288(a) provides,

> Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

The victim testified that petitioner touched her breasts "more than likely every time like he want to my house or I went to his." RT at 35. Her mother testified that petitioner came to their home almost every weekend to take care of their autistic son. RT at 64. She testified that her daughter told her that petitioner touched her inappropriately at his apartment and in their home in almost every room and in the back yard. RT at 63.

While the court agrees with the California Court of Appeal that the prosecutor could have done a better job in establishing a time frame, assuming that there was any better evidence which could have been forthcoming from the victim, the victim's generic testimony that petitioner touched her almost every weekend was sufficient to support count three. The victim testified as to the types of conduct petitioner committed against her on numerous occasions and described the general time period in which the acts occurred.

Moreover, the Supreme Court has, again, recently reminded us of the very high burden a petitioner carries when attempting to show that a decision by an appellate court is objectively unreasonable. Washington v. Sarausad, __U.S.__, __S.Ct.__, 2009 WL 129033 (Jan. 21, 2009). This is especially so when the federal issue to be determined is dependent to a degree on the interpretation of state law. Id. Here, the Court of Appeal was tasked with applying the legal standards set forth by the California Supreme Court in the difficult area of determining time lines in child molestation allegations. Unless there is no reasonable way to accept the determination of the state Court of Appeal, the decision stands.

\\\\\

The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

In the answer, respondent also suggests that petitioner is raising a claim that he was denied his right to notice and a fair opportunity to respond to the charges because count three charged him with an act occurring on an unspecified date between October 28, 2004, and November 27, 2004. The court does not find that petitioner is raising such a claim. In any event, in Brodit v. Cambra, 350 F.3d 985 (9th Cir. 2003), the Ninth Circuit rejected such a claim in a case where the petitioner was convicted of violating Cal. Penal Code § 288.5, pursuant to which he was charged with three acts of sexual abuse occurring on unspecified dates between June 12, 1992, and December 31, 1994. 350 F.3d at 988. The Ninth Circuit cited California cases finding no violation because defendants could take advantage of a variety of defenses in the absence of specific dates; for example, they could deny the allegations, advance positive character evidence, etc. Id. at 989. Because no clearly established Supreme Court case law supported the petitioner's claim, the court found that it was without merit. Id. Accordingly, were petitioner to raise a claim alleging that he was denied his right to present a defense because he was charged with an act occurring on an unspecified date, his claim would be denied pursuant to Brodit, supra.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 01/29/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

apodaca.157